Filed Dec. 15, 1883.

10,192.

LAFAYETTE AND WILDCAT GRAVEL ROAD COMPANY *v.* VANCLAIN ET AL.

DEED.—*Conditional Conveyance.* —*Maintaining Toll-House.*—*Real Estate, Action to Recover.*—A farm was conveyed, reserving a strip of land until a gravel road, which then had its only toll-house and gate at that place, should remove its "place of collecting toll" from said land. Before the suit in ejectment was begun against the gravel road company by a subsequent purchaser, to recover the strip, the company had erected one other toll-house and gate at another place, where its principal tolls were collected, but still maintained a toll-house at the old place at which only a trifling amount was collected, being only from persons passing to or from one direction upon the gravel road to or from an intersecting road which crossed it, and who would not pass the new toll-house. For said house and strip of land the keeper paid the company $25 per annum, besides collecting the toll. These facts were found specially by the trial court, with the conclusion of law that the plaintiff owned the strip and was entitled to its possession.

*Held*, that the conclusion of law was correct.

From the Superior Court of Tippecanoe county.

*A. A. Rice* and *T. B. Ward*, for appellant.

*G. O. Behm, A. O. Behm, T. E. Johnson, J. R. Coffroth* and *T. A. Stuart*, for appellees.

BLACK, C.—On the 25th of February, 1864, one Thomas S. Cox being the owner in fee simple of certain real estate in

Tippecanoe county—the west half of the southeast quarter of section 23, in township 23 north, range 4 west—he and his wife, by their warranty deed, conveyed it to the appellee James L. Vanclain, the grantors, by the terms of said deed, " reserving a strip in the southwest corner of said tract of one hundred feet by two hundred feet, being two hundred feet from north to south, and one hundred feet from east to west, with the express understanding that when the Lafayette and Wildcat Gravel Road is abandoned as a toll-road, or when the present place of collecting toll is removed from said land, then said strip is to revert to and belong to the tract above described."

On the 23d of July, 1879, the appellees James L. Vanclain and Mary A. Vanclain conveyed the real estate described above to one William Handley, and he, on the same day, conveyed it to the appellee Mary A. Vanclain, who, at the commencement of this action, and long prior thereto, was the wife of her co-appellee.

Before the commencement of this action, which was an action brought in May, 1881, by the appellees against the appellant, for the recovery of the possession of. said strip of land, said Cox had died, and the appellees had demanded possession of said property of the appellant, a gravel road corporation, duly organized on the 31st of May, 1856, pursuant to the act of May 12th, 1852, authorizing the construction of plank, macadamized and gravel roads. At the date of said conveyance from Cox, and for several years prior thereto, and continuously until about the spring of 1879, appellant had and maintained but one toll-house on the line of its road, at which all the tolls collected by said company were received. This toll-house was situated on the strip of land in controversy. During the year 1879 appellant erected another and different toll-house at another point on said road, about one mile west of said first mentioned toll-house, and away from said land, for the purpose of collecting toll also on said road. From and after the 1st of June, 1880, said company received

the principal tolls at said toll-house last established, being the average sum of $225 per month, and received at the toll-house on the land in controversy only the average sum of $1 per month between the 1st of June, 1880, and the commencement of this action, during which period said company kept no gate, pole or other sign at or across said gravel road at the place of said original toll-house, to indicate to the travelling public that this was the place of a toll-gate on said road, except that the rates of toll, which had been posted up on the front of said toll-house, remained from the time when they were first posted up. During said period after the 1st of June, 1880, said company kept a person in said first mentioned toll-house, who received said toll of $1 per month, except from the 6th of April, 1881, until the first week in May, 1881, during which last mentioned time said company was changing the position of said house on said strip and repairing said house, and it was vacant and the company received no toll thereat. The person so kept in said house, besides collecting said toll, also paid to said company, at the rate of $25 per year, in labor on said gravel road, for the use of said house and strip of land. Said gravel road was located upon the line of the Lafayette and Burlington State Road, by consent properly obtained from the board of commissioners of Tippecanoe county. Said toll-house before and at the time of the execution of said deed was, and thereafter continued to be, located wholly within said strip of land and partly within the limits of said Lafayette and Burlington State Road, and there were also situated on said strip, and wholly within it, a stable and smoke-house.

At the time of the commencement of this action, and for many years prior thereto, there were two public highways parallel with said gravel road, one at the distance of one-half a mile north of it, the other one mile south of it. At the toll-house on the land in controversy, said gravel road was intersected by a public highway extending between said road on the north and that on the south. From the toll-

house on said strip, by way of said gravel road, to the eastern limit of the city of Lafayette, opposite the central part of said city, it was one mile and a half; by way of said cross road and said highway on the north, to the eastern limit of Lafayette, at the terminus of Union street, and about one-half a mile north of the central part of the city, it was two miles; and by way of said cross road and said highway on the south, to the Dayton Gravel Road, it was two miles and a quarter.

Another public highway, running from said highway on the north to that on the south, intersected said gravel road at said new toll-house.

Between said two cross roads said gravel road was not intersected by any road.

Except the toll-house on the land in controversy, there was not, and there had not been, any toll-house on said gravel road at which toll could be collected from persons coming from the east on said gravel road and turning either north or south on said first mentioned cross road, or from persons coming from the north or south on this cross road and going east on said gravel road; and the person kept at said toll-house, on said strip, was to collect tolls from such persons. Those who travelled on said gravel road, who had passed said new toll-house going east, or who would, necessarily, pass it going west, were not required to stop or pay toll at the toll-house on the land in controversy.

From the 1st of November, 1880, to the 16th of May, 1881, the date of the filing of the complaint in this action, said gravel road was constructed and extended east from the toll-house on the land in controversy, a distance of six miles, and the whole length of said gravel road was seven and one-half miles.

The court, upon request for a special finding, having stated the facts as above in substance set forth, stated, as a conclusion of law thereon, that the appellees were the owners and entitled to recover the possession of the land in controversy,

subject to the easement of the appellant and the public in the highways, including said gravel road, situated thereon.

This conclusion is assigned as error. The only controversy is upon the question whether these facts show that what, at the time of the execution of said deed from Cox, was "the present place of collecting toll," had been "removed from said land."

Looking to substance, and not to mere form, the event contemplated by this language of the deed had occurred. If the occupation of the land was still beneficial, as a sort of outpost, for the purpose of securing the collection of a greater amount of tolls at the new toll-house than would probably be collected there if the old one were abandoned, this was not the purpose for which the reservation was made in said deed. The use of the old house for other beneficial purposes than that of gathering tolls at that place, and the collection of a merely nominal amount of tolls there, while the substantial revenue of the corporation was collected at another place, amounted, we think, to a change of the place of collecting toll, such as was contemplated by said deed.

The judgment should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be affirmed, at the costs of the appellant.

Filed June 1, 1883. Petition for a rehearing dismissed Dec. 15, 1883.